UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                           Bankruptcy No. 10-30288
                                                                 Chapter 7
Catherine M. Rick,

                Debtor.
_____/

Michael G. and Deanna Davenport,

                Plaintiffs,

        v.                                                Adversary No. 10-7016

Catherine M. Rick,

                Defendant.
_____/

**MEMORANDUM AND ORDER**

By Complaint filed July 12, 2010, Plaintiffs Michael G. and Deanna Davenport initiated this adversary proceeding seeking a determination that Defendant Catherine M. Rick's obligation to Plaintiffs in the amount of $13,099.46, plus interest, is nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (4) and (6). Defendant filed an Answer on August 9, 2010, admitting a state court default judgment was entered against her for the amount claimed but denying the allegations in Plaintiff's complaint.

**I.  FACTUAL BACKGROUND**

Defendant Catherine Rick was the registered agent, incorporator, sole stockholder, president, secretary and treasurer of Handydad Services, Inc. (Handydad). Defendant started Handydad in 2004 with a focus on yardwork, and Handydad's employees consisted of Defendant, her husband and children. The business expanded into remodeling and construction projects such as deck building,

bathroom remodeling, flooring, roofing, siding and windows. Defendant testified that the company had no equipment or vehicles and its only assets were accounts receivable.

Plaintiff Michael Davenport testified that he came into contact with Defendant through a friend who was having work done by Handydad. Plaintiffs contacted Defendant about having their bathroom and bedroom remodeled in the basement. In November 2008, Defendant visited Plaintiffs' residence to assess the project and take measurements.

Defendant testified that she had a cost-estimating computer program to generate estimates. Defendant testified that she generally scheduled an appointment with a prospective customer, and, if the customer approved the estimate, both parties signed a contract. Defendant testified that she presented an estimate to Plaintiffs following her visit to their residence. Plaintiffs each testified, however, that Defendant did not give them a written estimate. Notwithstanding, the parties stipulated that Plaintiffs and Handydad entered into a contract for service dated November 23, 2008, and Plaintiffs and Defendant signed the contract. The contract listed the cost of the project as $14,303.67. The payment terms of the contract included $10,012.00 in the form of a deposit, a progress payment in the amount of $2,500.00, and the balance due upon completion. It is undisputed that Plaintiffs gave Defendant a check for $10,012.00 as a deposit on November 23, 2008.

The project materials for the remodel job included knotty pine. Plaintiff Michael Davenport testified that Defendant ordered the knotty pine, but by December 16th or 17th, the materials had not yet arrived. Defendant recommended the knotty pine materials be ordered from Dickinson Lumber. Plaintiff Deanna Davenport testified that Defendant wrote on a scrap of paper that the

2

purchase price of the knotty pine that Defendant had ordered was $5,974.31.[1] Defendant testified she is not certain of the cost of the knotty pine she originally purchased, nor could she find a receipt for it. Plaintiff Michael Davenport testified that he placed a subsequent order for the knotty pine materials as Defendant suggested, and he paid $3,557.50 for the replacement knotty pine. He further testified that Defendant told him that she had to wait for the original knotty pine materials to be returned before she could reimburse Plaintiffs for the cost of the original knotty pine that they paid for as part of the deposit. Plaintiff Michael Davenport testified that Defendant never did reimburse Plaintiffs.

Defendant requested additional money from Plaintiff Deanna Davenport for progress payments so that Defendant could pay her employees. It is undisputed that Plaintiff Deanna Davenport gave Defendant another check dated December 23, 2008, for the amount of $1,500.00. The check was cashed at Great Plains National Bank, although Defendant's business account was at Dakota Community Bank. Plaintiff Deanna Davenport testified that Defendant said she would return $300.00 of the payment to Plaintiffs when she received money back from the first order of knotty pine.[2]

It is undisputed that Handydad did not complete the work contemplated by the contract, and Handydad withdrew from the project. Defendant testified that all of the remodeling that Plaintiffs requested involved types of work she had previously performed for other clients and that she made

---

[1] The undated note with Defendant's handwriting also contains notations made by one of Plaintiffs. The note states in Defendant's handwriting, "Knotty pine $5,974.31 / 2 = $2,987.15. The symbol "/" appears to denote "divided by 2," but it has been blackened over and changed into an arrow which in turn points to part of Plaintiff's writing.

[2] Plaintiff Deanna Davenport wrote on the memo line of the check, "paid in full plus additional 300."

3

no false representations regarding her ability to do the job. She had completed at least ten bathrooms prior to this job, and none of those clients had complaints. Moreover, Defendant completed subsequent projects for those previous clients. Defendant testified that each day, Plaintiffs gave her a list of things to change, and she felt she was unable to satisfy Plaintiffs despite her best attempts. Also, Plaintiffs' additions to the project increased costs. Plaintiff Michael Davenport testified that he asked Defendant for receipts for materials and a detailed report of labor and materials used up to the point Defendant withdrew from the project, but that Defendant did not provide any documentation.

Plaintiff Michael Davenport testified about the poor workmanship performed by Handydad. He testified that Defendant sheetrocked the walls before the wiring was installed and paneled directly over studs rather than putting sheetrock under the paneling. Defendant also only sheetrocked where the walls were visible. Plaintiff Michael Davenport also observed crooked doors and pine planking that was broken in places because the nails that were used were too large. Where the planking was broken, Defendant did not remove the broken pieces, but rather, just continued hanging the planking. Plaintiff Michael Davenport testified that the lines did not match up and the materials were not square or level. Plaintiff Michael Davenport testified that he paid another business $4,420.00 to correct Defendant's poor workmanship.

The parties stipulated that on January 16, 2009, Plaintiffs received a check from Handydad for reimbursement of payments in the amount of $2,575.15. Plaintiff Michael Davenport testified that they did not immediately cash the check because they did not agree with the settlement amount. Defendant testified that when she sent the check to Plaintiffs, the account held funds sufficient to cover the check. Plaintiff Deanna Davenport testified, however, that she called Defendant's bank several times to check to see if there were sufficient funds to cash the check and there were not. She

4

also admitted that she never ran the check through to get a stamp indicating nonsufficient funds. She attempted to cash the check on February 3, 2009, and it was returned because Defendant had stopped payment. Plaintiffs commenced a state court action against Handydad on February 23, 2009, for breach of contract, fraud and the work was not performed in a substantial workmanlike manner. Defendant testified that when she received a letter stating that Plaintiffs wanted to pursue the action in court, she stopped payment on the check.  The state court entered default judgment against Handydad in the amount of $13,089.46 plus interest on June 1, 2009. Plaintiffs filed a complaint against Defendant personally on November 30, 2009, when they were unable to collect from Handydad. They alleged Defendant's representations were misleading, false and fraudulent, and asked the court to pierce the corporate veil. Plaintiffs obtained a default judgment against Defendant on December 8, 2009, in the amount of $12,969.46, plus interest.

Defendant testified that there were other judgments against Handydad between 2006 and 2009 and the corporation quit doing business sometime in 2009. Defendant testified, however, that she continued doing business as a sole proprietorship in 2009 under the Handydad name. Defendant filed a voluntary petition for bankruptcy relief under Chapter 7 of the Bankruptcy Code on March 18, 2010.

## II.  CONCLUSIONS OF LAW

The statutory exceptions to discharge in bankruptcy are narrowly construed to effectuate the fresh start policy of the Bankruptcy Code.  Owens v. Miller (In re Miller), 276 F.3d 424 (8th Cir. 2002).  Accordingly, a creditor opposing discharge of a debt must prove the debt falls within an exception to discharge.  Werner v. Hofmann, 5 F.3d 1170, 1172 (8th Cir. 1993).  The standard of proof for exceptions to discharge under section 523(a) is the preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 286 (1991); Simek v. Erdman (In re Erdman), 236 B.R. 904, 910 (Bankr.

5

D.N.D. 1999). If an objecting plaintiff fails to establish every element under section 523(a), the indebtedness at issue is dischargeable. Id.

Plaintiffs allege that the default judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (4) and (6). Plaintiffs specifically argue that collateral estoppel and res judicata apply.

Although prior judgments have no res judicata effect in dischargeability actions under section 523(a), the United States Supreme Court has acknowledged that the narrower doctrine of collateral estoppel indeed applies in discharge exception proceedings to bar the relitigation of factual or legal issues that were determined in a prior proceeding. Grogan v. Garner, 498 U.S. 279, 284 (1991); Brown v. Felsen, 442 U.S. 127, 139 (1979); see also Johnson v. Miera (In re Miera), 926 F.2d 741, 743 (8th Cir. 1991); Lovell v. Mixon, 719 F.2d 1373, 1376 (8th Cir. 1983); Olson v. Dep't of Treasury (In re Olson), 170 B.R. 161 (Bankr. D.N.D. 1994); Ashton v. Burke (In re Burke), 83 B.R. 716, 723 (Bankr. D.N.D. 1988); Sanford v. Hanson (In re Hanson), 45 B.R. 60, 62 (Bankr. D.N.D. 1984). In Grogan, the Supreme Court stated, "[A] bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action." 498 U.S. at 284. The use of collateral estoppel in dischargeability proceedings under section 523(a) is, however, subject to the caveat that it be applied with great care because bankruptcy courts are vested with the exclusive jurisdiction to determine the nondischargeability of debts. In re Olson, 170 B.R. at 165. The fundamental purpose of collateral estoppel is not to foreclose a party from putting forth contested factual issues before the court, but rather is intended to bar their submission twice. Id. at 166.

It is well settled that under the doctrine of collateral estoppel, four elements must be clearly established in order for an issue to be given preclusive effect in a subsequent proceeding:

6

1. The issue sought to be precluded must be the same issue as that involved in the prior action;
2. The issue must have been actually litigated;
3. The issue must have been determined by a valid and final judgment; and
4. The determination of the issue must have been essential to the final judgment.

Id. at 166.

The elements make clear that collateral estoppel applies to only those issues which have actually and necessarily been litigated and decided by a final judgment. Id.; Lovell v. Mixon, 719 F.2d at 1376. In the case at hand, it is undisputed that Plaintiffs obtained a default judgment against Defendant and the matter was not litigated.

A.   11 U.S.C. § 523(a)(2)

Section 523(a) of the Bankruptcy Code exempts certain debts from discharge in bankruptcy, including debts for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A). To establish nondischargeability under section 523(a)(2)(A), a creditor must prove by a preponderance of the evidence that:

(1) the debtor made a representation;
(2) at the time the representation was made the debtor knew it was false;
(3) the debtor subjectively intended to deceive the creditor at the time he made the representation;
(4) the creditor justifiably relied on the representation; and
(5) the creditor was damaged.

Blue Skies, Inc. v. Preece (In re Preece), 367 B.R. 647, 652 (B.A.P. 8th Cir. 2007). Where an objecting party fails to establish every element of a section 523(a)(2)(A) action, the indebtedness at issue is dischargeable. Simek v. Erdman (In re Erdman), 236 B.R. 904, 910 (Bankr. D.N.D.

7

1999). Exceptions to discharge are narrowly construed against a creditor and liberally in favor of the debtor to effectuate fresh start policy of the Bankruptcy Code. Merchants Nat'l Bank of Winona v. Moen (In re Moen), 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999).

1. Representation and Falsity

Section 523(a)(2)(A) includes both false representation, which is an express misrepresentation, and false pretense, which involves "an implied misrepresentation or conduct intended to create and foster a false impression." Finch v. Finch (In re Finch), 289 B.R. 638, 643 (Bankr. S.D. Ohio 2003); Rainer Title Co., Inc. v. Demarest (In re Demarest), 176 B.R. 917, 920 (Bankr. W.D. Wash. 1995).

There is no dispute that Defendant represented to Plaintiffs that Handydad could perform and complete the remodeling project of Plaintiffs' bathroom and bedroom. A contract was signed for the amount of $14,303.67. There is no evidence to suggest, however, that Defendant knew this was false at the time Defendant signed the contract. In fact, Defendant had completed this type of work prior to this project, she did not receive complaints and has had subsequent jobs from those previous clients. Defendant's husband had also been in the construction business prior to working for Handydad.

2. Intent to Deceive

Intent may be inferred from a debtor's actions at the time of and subsequent to the loss. In re Finch, 289 B.R. at 643. A court is to "consider whether the circumstances, as viewed in the aggregate, present a picture of deceptive conduct by the debtor which indicates an intent to deceive creditor." Crawford v. Monfort (In re Monfort), 276 B.R. 793, 796 (Bankr. N.D. Ohio 2001).

In this case, Defendant and her employees/family began work and continued until it became clear to Defendant that the parties were not able to successfully work out the details of the contract

8

and Plaintiffs were not going to be satisfied by Defendant's work. There is no evidence that Defendant intended to deceive Plaintiffs.

    3.    Reliance and loss

As to the elements of reliance and loss, Plaintiffs relied on Defendant's representation that she would complete the project and suffered a monetary loss, but as stated above, there is no evidence of Defendant's intent to deceive or of her knowledge of the falsity of her representation. Therefore, Plaintiffs' claim for nondischargeability fails under section 523(a)(2)(A).

B.    11 U.S.C. 523(a)(4)

Plaintiffs also allege that Defendant's conduct constitutes embezzlement or larceny under section 523(a)(4). The Bankruptcy Code provides that an individual debtor in a Chapter 7 case is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4).

    1.    Embezzlement

Embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." Belfry v. Cardozo (In re Belfry), 862 F.2d 661, 662 (8th Cir. 1988). It is the subsequent possession by the debtor that becomes unlawful. Montegomery v. Montegomery (In re Montegomery), 236 B.R. 914, 922 (Bankr. D.N.D. 1999). To prove embezzlement, a creditor must prove that the debtor acted with fraudulent intent. Id. The embezzlement exception requires that a defendant improperly used the creditor's property before complying with some obligation to Plaintiff. In re Belfry, 862 F.2d at 663.

In this case, there is no evidence that Defendant acted with fraudulent intent or that Defendant improperly used Plaintiffs' property before complying with some obligation to them. The

9

embezzlement exception does not apply because Defendant's possession did not become unlawful at any point. Defendant attempted to return payment to Plaintiffs when the parties mutually ended the contract and Plaintiffs informed Defendant they intended to seek legal action.

2.  Larceny

Larceny is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner. Eggelston v. Eggelson (In re Eggelston), 243 B.R. 365 (Bankr.W.D. Mo. 2000) (citing Rech v. Burgess (In re Burgess), 106 B.R. 612, 622 (Bankr. D. Neb. 1989)). The essential difference between larceny and embezzlement is the manner in which property comes into the possession of the person charged. Id. As the original taking and possession of Plaintiffs' property by Defendant was not unlawful, Defendant did not commit larceny with respect to Plaintiff's property, and the larceny exception does not apply.

Therefore, Plaintiffs have not met their burden of proving that Defendant's acts were embezzlement or larceny. Plaintiffs' claim for nondischargeability also fails under section 523(a)(4).

C.  11 U.S.C. § 523(a)(6)

The Bankruptcy Code provides that an individual debtor in a Chapter 7 case is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The terms "willful" and "malicious" are two distinct elements, and each must be shown to establish an exception to discharge. Porter v. Porter (In re Porter), 375 B.R. 822, 827 (B.A.P. 8th Cir. 2007).

The term willful means deliberate or intentional. Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998); In re Porter, 375 B.R. at 827. The injury, and not merely the act leading to the injury, must be deliberate or intentional. Geiger, 523 U.S. at 61- 62. Malice requires conduct which is targeted at the creditor, at least in the sense that the conduct is certain or almost certain to cause financial injury. Madsen v. Lease, 195 F.3d 988, 989 (8th Cir. 1999); D'Amato v. D'Amato (In re D'Amato), 341 B.R. 1, 4-5 (B.A.P. 8th Cir. 2006). Malice requires conduct more culpable than that which is in reckless disregard of the creditor's economic interests and expectancies. In re Porter, 375 B.R. at 827. A debtor acts with malice by intending or fully expecting to harm the economic interests of the creditor. Id. The debtor's knowledge that he or she is violating the creditor's legal rights is insufficient to establish malice absent additional aggravating circumstances. Johnson v. Logue (In re Logue), 294 B.R. 59, 63 (B.A.P. 8th Cir. 2003). It is the intent to cause harm to the creditor which must exist for an injury to be malicious. In re Porter, 375 B.R. at 827. To prove nondischargeability in the instant case, Plaintiffs must prove that Defendant caused (1) willful and malicious (2) injury (3) to its property.

There is no evidence in this case that Defendant's acts were deliberate or intentional in order to cause injury to Plaintiff . Defendant attempted to complete the contract. Defendants work product or workmanship may have been below standard but Defendant attempted to remedy Plaintiffs' concerns. Defendant testified that Plaintiffs continued to make changes and additions to the remodel job. When it appeared to her that Plaintiffs were not going to be happy with her work, she withdrew by mutual agreement. Defendant attempted to reconcile and gave Plaintiffs a check in the amount of $2,575.15. Plaintiffs admitted they did not cash the check on the basis that they believed the amount was insufficient. Plaintiffs informed Defendant that they were seeking legal action. Defendant's action cancelling the check was reasonable in light of the fact Plaintiffs informed

11

Defendant it was not enough to remedy the situation and that they were seeking legal action against Defendant. Therefore, Plaintiffs have not met their burden of proving that Defendant's acts were willful or malicious. Plaintiffs' claim for nondischargeability also fails under section 523(a)(6).

Based on the foregoing, Plaintiffs have failed to prove their claims under section 523(a)(2), (4) and (6) by a preponderance of the evidence. The debt owed by Defendant Catherine M. Rick to Plaintiffs Michael G. and Deanna Davenport is dischargeable. The Court has considered all other arguments and deems them to be without merit.

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

Dated this April 6, 2011.

                      **WILLIAM A. HILL, JUDGE**
                      **U.S. BANKRUPTCY COURT**